FRUGÉ, Judge.
Joseph Murray Scruggins and his wife, Mrs. Myrtis Carrier Scruggins, instituted actions against the defendants, Connecticut Fire Insurance Company, Plattsmier and Roussel, a partnership, the individual members of said partnership, namely W. J. Plattsmier and C. J. Roussell, and their employee, Irvin A. Arceneaux. The action arose out of an accident between plaintiff’s automobile and defendants’ truck in St. Landry Parish, Louisiana. The cases were consolidated for trial. The trial court rendered judgment in favor of the plaintiff Joseph Murray Scruggins in the amount of $27,706.77 plus interest and cost, and rendered judgment in favor of the plaintiff Mrs. Myrtis Carrier Scruggins in the amount of $10,000 plus interest and cost against the same defendants. The judgment in favor of Joseph Murray Scruggins is limited as to Connecticut Fire Insurance Company to the sum of $20,000, that being the maximum amount of its coverage for its co-defendants assureds Plattsmier and Roussell, W. J. Plattsmier and C. J. Rous-sell. From this judgment defendants have appealed.
These consolidated cases resulted from an automobile-truck collision which occurred on Louisiana Highway 103 which leads from Port Barre to Washington, in St. Landry Parish, Louisiana, and goes generally in a north-south direction. This road is rather winding and is black-topped with no dividing line. The 1951 Pontiac automobile driven by Joseph Murray Scruggins, in which his wife, Mrs. Myrtis Carrier Scruggins and stepdaughter, Nola Hebert, were passengers, was traveling in a northerly direction approximately a mile and one-half away from Port Barre. The 1953 Chevrolet truck of Plattsmier and *370 Roussell, driven by Irving Arceneaux, was traveling in the opposite or southerly direction toward Port Barre. This accident occurred in one of the many sharp curves on this blacktop highway; it is to be noted that the highway narrows from a width of 21 feet prior to entering the curve to a width of approximately 16 feet at the middle of the curve. The time of the accident was fixed at approximately S :30 P.M. The weather was clear, the sun was still up, and the road was dry.
It appears that the major issue involved in this case is the determination of whether the point of impact was in the east lane of the highway, the proper lane of travel for the Scruggins’ automobile, or the west lane of traffic which was the proper lane of travel for the truck. The only eyewitnesses to the accident were the Scruggins and their 10 year old foster child, Nola Hebert, and Irving Arceneaux. The plaintiffs Joseph Murray Scruggins and Myrtis Carrier Scruggins both testified that the collision occurred in their lane. Arceneaux, the driver of defendant’s truck, testified that the vehicles collided in the west lane of traffic or his lane of traffic.
In its Reasons For Judgment the trial court stated:
“1. That the plaintiffs have proved their case by an overwhelming preponderance of the evidence consisting not only of the testimony of the witnesses presented, but in addition thereto the physical facts clearly substantiate the testimony of plaintiffs’ witnesses.
“2. That Mr. J. A. Boudier, a professional photographer, who had no interest in the outcome of the case, took pictures on October 2nd, 1959, which was the day following the accident. The pictures show the oil spots and other debris from the automobile and when considered with the testimony of other witnesses establishes that the point of impact was in the lane of traffic of the plaintiffs. The Court is of the opinion that the additional oil spots and other debris which appear to be in the opposite lane of traffic establish the location of plaintiff’s automobile after it had been dragged backwards and to the west following the collision.
“3. That the Court is firmly convinced that the survey of Mr. Morgan J. Goudeau, Jr., a Civil Engineer and Surveyor, is correct and particularly correctly reflects the point of impact which discloses that the defendants’ truck hit the plaintiffs’ car in the plaintiffs’ lane of travel.
“4. That the record is clear that the sun was shining and that it was a dry day; that Mr. Ivan ‘Buck’ Ryder ran out immediately after the accident which he testified occurred at about 5 :45 P.M.; that the accident happened right in front of his house; that he was the first person to arrive at the scene of the accident. Without any contradiction he testified that he saw dirt, water, skid marks and oil in the east lane, which would be plaintiffs’ proper lane; that he followed the skid marks which were made entirely by the plaintiffs’ car and which skid marks began in the plaintiffs’ lane of traffic about two (2') feet from the eastern edge of the highway, backwards about twelve (12') feet and to the west to the point where the vehicles were located following the accident.
“The Court is convinced without any doubt that the truck struck the automobile in the plaintiffs’ lane of traffic and dragged the plaintiffs’ automobile about twelve (12') feet towards center of the road and that the reason the front wheel of plaintiffs’ car was in the defendants’ lane of travel is because the truck dragged it there.
“5. That the Court is of the opinion that the place where Mr. Ivan ‘Buck’ Ryder stands in the photographs of Mr. Boudier is the true and correct point of impact.
“6. The Court further observed that on cross examination of Mr. Ryder his testimony was not contradicted in any manner as to the point of impact and physi *371 cal evidence and in fact was corroborated by the testimony of Police Officer Melvin McGee and Trooper Doucet.
“7. Mr. Melvin McGee, night policeman of Port Barre, corroborated the testimony of Mr. Ryder relative to the skid marks and testified substantially the same as Mr. Ryder, although he did not see any oil spots. He did see the dirt, pieces of chrome and glass in plaintiffs’ lane of travel.
“8. That this collision was investigated by State Troopers Donald White and Marion Doucet. Trooper White made an investigation of the accident after it had happened but he positively states that he did not determine the point of impact and that he should have done this.
“That Trooper Donald White further stated that the report he made, the night of the accident, was wrong. He further stated that the charge against the plaintiff, Mr. Scruggins, for being on the wrong side of the road was dropped after the investigation of the accident was completed, as it was determined by Trooper Doucet that the point of impact was in Scruggins right lane of travel.
“9. That as indicated hereinabove, on the day after the accident, Trooper Doucet reinvestigated and found that point of impact namely dehris, and oil spots were in the plaintiffs’ lane of travel. He further noted that the skid marks of plaintiffs’ car began at the point of impact in the plaintiffs’ lane of travel and the plaintiffs’ car was dragged back by defendants’ truck about fifteen (15’) feet. He further stated that his report is the official and final report and is the only one filed in Baton Rouge relative to the accident.
“10. The defense put three witnesses on the stand, namely Mr. C. K. Langlinas, a land surveyor, whose testimony was practically worthless. The next witness was Mr. John B. Bosworth, an insurance adjuster for the defendants. The Court was not impressed with his testimony to any degree. He testified he arrived at the scene the morning after the accident and does not know where the impact occurred. The Court is convinced that Mr. J. A. Boudier, the photographer, who testified for the plaintiffs is a completely disinterested witness whereas Mr. Bosworth as an adjuster for the defendant would certainly be interested in presenting the best possible case for the defendants. Finally, Mr. Irving Arceneaux, the driver of the truck, testified that he was acting in the scope and course of his employment; that he ceased to work for the defendants’ partnership immediately after the accident and that he has been wearing glasses since he was six (6) or seven (7) years old. The Court observed Mr. Arceneaux on the witness stand and he wore strong lenses which would indicate weak eyesight.
“11. This Court is of the opinion that the defendants have failed in every respect to successfully defend this case, and that the sole and proximate cause of this collision is the flagrant, wanton and gross negligence of the defendants’ driver, Mr. Irving Arceneaux.
“12. With reference to the injuries suffered by Mr. J. M. Scruggins, the record discloses that he was treated by Dr. Emile Ventre, a general practitioner and by Dr. Walter Comeaux, a chest specialist. Dr. Ventre described in detail that he first attended the plaintiff on October 1, 1959. That the plaintiff had labored respiration, was acutely ill and in a great deal of pain. In addition his blood pressure had fallen, he was in a state of shock, had eleven rib fractures, increased pulse rate, lacerations of his left arm, bruises, collapsed left lung and his heart was moved three-fourths (jkjths) of an inch or one (1) inch. Dr. Ventre further testified that Mr. Scruggins began to turn blue from lack of oxygen and it was necessary to put a needle in his chest for three (3) days to draw out fluid. Dr. Walter Comeaux, a chest specialist, was called in from Lafayette and he operated on his chest and only then, did the *372 lung begin to expand. This is classified in the Court’s opinion as major surgery.
“13. Dr. Ventre continued to treat Mr. Scruggins at regular intervals and he failed to improve, and Mr. Scruggins began to experience paradoxical motion of chest region. In early 1960 respiration of plaintiff became worse so Dr. Ventre again called Dr. Comeaux. Dr. Comeaux came to Opelousas and placed plaintiff under general anesthesia and performed surgery on the chest region again and repaired the ribs by shortening them and sutured these ribs with wire. In the court’s opinion, this again was major surgery.
“14. Dr. Emile Ventre is still treating the plaintiff and testified that the plaintiff cannot do any heavy work now and certainly cannot do the work he did before the accident. He was classified by the Doctor as a permanent pulmonary cripple.
' “15. Dr. Ventre testified because of his physical condition Mr. Scruggins can do only ‘piddling jobs’ which would be very very light work with no heavy exertion at all. As a matter of fact, the Court firmly believes that he will never again earn the wages he was earning at the time of the accident. If it would not be for the fact that the plaintiff is limited by his pleadings the Court would allow him not only the loss of wages of $2,760.00, but would allow loss of future wages of more than $6,000.00 because of plaintiff’s permanent disability.
“16. This plaintiff must have suffered excruciating pain and will continue to have pain and suffering permanently. In addition, plaintiff has a permanent impairment of his pulmonary reserve and is permanently unable to exert himself.
“17. Dr. Emile Ventre also examined Myrtis Carrier Scruggins, wife of plaintiff, Joseph Murray Scruggins. She has been under his care prior to the accident for respiratory infections, nervousness, stomach upsets and what is extremely important a mild anxiety neurosis which would come and go.
“18. Dr. Ventre examined her and found bruises, contusions of the left arm and chest injuries. After detailed N-rays, he found a rib fracture and cartilage fractures in the thoracic area.
“19. Furthermore and more important is that Dr. Ventre positively testified that as a result of this accident she is now suffering from acute anxiety neurosis and she is bordering on a psychotic state. Dr. Ventre further testified that she is a severe psychoneurotic now and has had several spells. The Court’s interpretation of Dr. Ventre’s testimony is that she had an extremely severe nervous reaction to the accident and that her nervous disorder is caused or aggravated extensively by the accident and that she has completely loss contact with reality from time to time as a result of this accident and this is apt to reoccur and become worse.
“20. Mrs. Murray Scruggins was sitting in the court room on the second day of the trial, February 9th, 1961 and had a complete nervous breakdown in the courtroom. Dr. Ventre was immediately called and he gave-her strong sedatives and the court ordered that she be sent home and not be permitted to testify because to do so might have brought about recurrences of the nervous breakdown which occurred. Furthermore, the fact that she did not testify should not be a presumption that her testimony would be adverse to the plaintiffs’ case. The Court is firmly convinced that her severe nervous disorder was brought on by this accident and because of her extreme worry over her husband’s condition.
“21. The Court is of the opinion that the plaintiff, Joseph Murray Scruggins is entitled to receive a total judgment of TWENTY SEVEN THOUSAND, SEVEN HUNDRED SIX AND 77/100 ($27,706.77) DOLLARS, together with legal interest from date of judicial demand, until *373 paid, which said amount is itemized as follows:
■“(a) Total medical expenses to date for both plaintiffs — • $3,946.77
“(b) For loss of wages from date of accident to August 11, 1960— $2,760.00
“(c) Loss of future wages and earning due to his permanent disability— $6,000.00
“(d) For the permanent disability and the excruciating mental and physical pain that this palintiff has undergone and will undergo in the future— $15,000.00
“That all of the defendants with exception of Connecticut Fire Insurance Co. are cast in judgment in solido for the full amount thereof, but the judgment against defendant, Connecticut Fire Insurance Co. shall be limited to Twenty Thousand and no/100 ($20,000.00) Dollars, plus legal interest from date of judicial demand, and costs since that is the limit of the public liability policy of the company for injuries received by any one person.
22. The Court is also of the opinion that plaintiff, Mrs. Myrtis Carrier Scruggins is entitled to receive a total judgment of TEN THOUSAND and No/100 ($10,000.-00) DOLLARS, together with legal interest from date of judicial demand, until paid, against all defendants in solido, for the reasons hereinabove stated.”
Defendants have inferred that the testimony of some of the witnesses may have been bias or even perjured; after examining the record, we do not find this to be so. Further, the jurisprudence and the accepted doctrine of this state is that the trial court is in a far better position to evaluate the testimony and to judge the credibility of witnesses than is an appellate court, and the trial court’s factual findings should not be disturbed unless manifestly erroneous, especially when based on an evaluation of the credibility of opposing witnesses. Fouquier v. Fouquier, 231 La. 430, 91 So.2d 591; Jones v. Jones, 232 La. 102, 93 So.2d 917; Pierre v. Galloway, La. App., 96 So.2d 916; Guidry v. Crowther, La.App., 96 So.2d 71; Lebo v. Metropolitan Casualty Co. of New York, La.App., 99 So.2d 417. After reviewing the record, we find that there is no manifest error and that the judgment of the trial court is correct.
There appears to be no serious dispute regarding the amounts allowed plaintiffs by the trial court in its judgment. We believe these amounts to be fair and equitable.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.